UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

RACHEL L. OLMSTEAD,

          Plaintiff,

    v.

CAROLYN W. COLVIN,

          Defendant.

Case No.  15-cv-02656-NJV

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 15, 16

## INTRODUCTION

Plaintiff, Rachel L. Olmstead, seeks judicial review of an administrative law judge ("ALJ") decision denying her application for supplemental security income payments under Title XVI of the Social Security Act. Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council. The decision thus is the "final decision" of the Commissioner of Social Security, which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge. (Docs. 7 & 12). The court therefore may decide the parties' cross-motions for summary judgment. For the reasons stated below, the court will grant Plaintiff's motion for summary judgment, and will deny Defendant's motion for summary judgment.

## LEGAL STANDARDS

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial

United States District Court
Northern District of California

evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## BACKGROUND

Plaintiff was diagnosed with a history of mental impairments, including borderline personality disorder, bipolar disorder, major depressive disorder, panic disorder, anxiety disorder, and PTSD. *See, e.g.* AR. 269, 271-72 & 388. Plaintiff reported suffering reoccurring trauma related to sexual abuse as a child and rape as a teenager. AR. 425. Plaintiff also reported a "strong history" of suicidal thoughts and attempts. AR. 428.

## THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909. The ALJ must consider all evidence in the claimant's case record to determine disability (*Id*. § 416.920(a)(3)), and must use a five-step sequential evaluation to determine whether the claimant is disabled (*Id*. § 416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

Here, the ALJ evaluated Plaintiff's application for benefits under the required five-step sequential evaluation. *See* AR. 17-24.

At Step One, the claimant bears the burden of showing she has not been engaged in "substantial gainful activity" since the alleged date the claimant became disabled. 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be substantial gainful activity,

2

1    the claimant will be found not disabled.  *Id.*  The ALJ found that Plaintiff had not engaged in

2    substantial gainful activity since her alleged onset date.  AR. 19.

3          At Step Two, the claimant bears the burden of showing that she has a medically severe

4    impairment or combination of impairments.  20 C.F.R. § 416.920(a)(4)(ii), (c).  "An impairment is

5    not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no

6    more than a minimal effect on the ability to do basic work activities.'"  *Webb v. Barnhart*, 433

7    F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)).  The ALJ found that Plaintiff

8    suffered the following severe impairments:  affective disorder and personality disorder.  AR. 20.

9          At Step Three, the ALJ compares the claimant's impairments to the impairments listed in

10   appendix 1 to subpart P of part 404.  *See* 20 C.F.R. § 416.920(a)(4)(iii), (d).  The claimant bears

11   the burden of showing her impairments meet or equal an impairment in the listing.  *Id.*  If the

12   claimant is successful, a disability is presumed and benefits are awarded.  *Id.*  If the claimant is

13   unsuccessful, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds

14   to Step Four.  *Id.* § 416.920(a)(4)(iv), (e).  Here, the ALJ found that Plaintiff did not have an

15   impairment or combination of impairments that met or medically equaled one of the listed

16   impairments.  AR. 20.  Next, the ALJ determined that Plaintiff retained the RFC "to perform a full

17   range of work at all exertional levels and is able to sustain simple, repetitive tasks equating to

18   unskilled work with limited public contact."  AR. 21.

19         At Step Four, the ALJ determined that the transferability of job skills was irrelevant

20   because Plaintiff had no past relevant work experience.  AR. 23.

21         At Step Five, after considering the Plaintiff's age, education, work experience, and RFC,

22   and after consulting the Medical-Vocational Guidelines, and finding that Plaintiff's nonexertional

23   limitations had little or no effect on the occupational base of unskilled work, the ALJ determined

24   that there are jobs that exist in significant numbers in the national economy that Plaintiff can

25   perform.  AR. 23.  Accordingly, the ALJ found that Plaintiff had "not been under a disability, as

26   defined in the Social Security Act," through the relevant time period.  AR. 24.

27   //

28   //

United States District Court
Northern District of California

United States District Court
Northern District of California

**ISSUESS PRESENTED**

Plaintiff raises four challenges to the ALJ's determination, arguing that:  (1) "[t]he ALJ failed to discuss, or even cite, significant amounts of medical evidence related to claimants severe mental impairments;"  (2) "[t]he ALJ's analysis of Dr. Segal's records was based on speculation and was inconsistent with the overall evidence of record, including Dr. Segal's notes;"  (3) "[t]he ALJ's analysis fail[ed] to consider the Borderline Personality disorder;" and (4) "[t]he ALJ's reliance on the consultative examination was not supported by the overall record."  Pl.'s Mot. (Doc. 15-1) at 3-9.

### *The ALJ's failure to discuss significant medical evidence of record*

Plaintiff argues that it was error for the ALJ to fail "to discuss, or even cite, significant amounts of medical evidence related to claimants severe mental impairments."  Pl.'s Mot. (Doc. 15-1) at 3.  "Specifically, the ALJ failed to mention, much less discuss or explain weight given to, the records from Dr. Mary Bogle, Psy.D. of Clearlake Family Medical Clinic.  There was also no mention or discussion of the records from Mendocino Community Mental Health."  *Id*.  The Commissioner counters that "[n]one of the records that Plaintiff cites indicated any functional limitations and thus were not 'medical opinions' as contemplated by the regulations."  Def.'s Mot. (Doc. 16) at 2.

"Because a court must give 'specific and legitimate reasons' for rejecting a treating doctor's opinions, it follows even more strongly that an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them."  *Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015).  The Commissioner's suggestion that the court can simply ignore the ALJ's disregard of the medical records at issue because the records are not "medical opinions" ignores the *Marsh* decision and the regulations and misreads the records in question.

Plaintiff summarizes the evidence in question as follows:

From Dr. Mary Bogle, PsyD (and one visit with and Julie Payette, APRN) of Clearlake Family Medical clinic:

5/21/13: Dr. Bogle. Ax I: PTSD, Major Dep d/o - severe, Panic d/o with agoraphobia, PTSD., GAF 49 (Ex. B9F/3.)
5/13/13: Nurse Payette. Ax. I Mixed bipolar disorder with generalized anxiety disorder and panic disorder. Axis V. GAF of 40. (Ex. B9F/6.)

3/19/13: Dr. Bogle. 40 y/o divorced Caucasian female who present with a history of bipolar d/o and personality d/o. (She does not remember which one.). She has a history of 6 suicide attempts and reports ideation but no plan or intent. She reports a history of sexual and physical abuse. Burns Anxiety Inventory indicates "severe" anxiety. PHQ-9 indicates "severe" depression and PTSD checklist is at 51, and she meets criteria for PTSD. She denies mood swings at present. Panic attacks occur a couple times a week. Ax. I Major Dep d/o - severe, Panic d/o with agoraphobia, PTSD; Ax. V GAF: 40. Symptoms stable at present. (AR 388.)

2/26/13: Dr. Bogle: Ax. I Major Dep d/o - severe, Anxiety d/o NOS, mood disorder NOS, R/o Panic d/o with agoraphobia, r/o PTSD; Ax. V GAF: 45. (AR 394.)

Mendocino Community Mental health records include:

9/28/11: Doug Rosoff, DO – chief Psychiatrist Dx: Bipolar depression, Obesity, PTSD. Fleeting suicidality. Poor support system. Medications: Klonopin, Abilfy, Cogentin, Cymbalta, Buproprion. (AR 271.)

7/19/11: E. Buxton, FNP A Bipolar with depression, PTSD, Personality Disorder (AR 272.)

6/14/11: has low problems solving skills and low insights as to her role in the above situations.  The meds seem to control the Bipolar and PTSD, but do not affect ct's inability to work, take care of her family or make good decisions.
A: Bipolar with depression, PTSD, Personality Disorder NOS. (AR 273.)

4/12/11: "…has absolutely no boundaries and has been warned many many times by landlord and by provider not to allow multiple people to live in the apartment and to stop the late night parties. She is out of touch with reality when she lets various friends of her daughters live at the apartment and be noisy at night. Ct has had prior evictions and been homeless numerous times. Meds include Abilify, Cymbalta, Wellbutrin, Klonopin, Cogentin, However it is doubtful that more medications will modify client's behavior and lack of judgment and insights….A: Bipolar with depression, PTSD, Personality Disorder NOS, Family dysfunction (AR 275.)

Pl.'s Mot. (Doc. 15-1) at 4-5.

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527.  Certainly the notes of Dr. Bogle which contained diagnoses of PTSD, major depressive disorder - severe, and panic disorder with agoraphobia reflected "judgments about the nature and severity" of Plaintiff's impairments, including diagnosis.  The ALJ's failure to discuss and evaluate these statements and opinions was error.  This is especially true where the RFC included limitations on Plaintiff's interaction with the public and Dr. Bogle diagnosed panic disorder with agoraphobia.  The court is unable to determine whether Dr. Bogle's opinions or statements were incorporated within the RFC, or were rejected, either properly or improperly, because the ALJ makes no mention of them.  Moreover, while the ALJ found Plaintiff suffered the severe impairment of affective disorder at Step Two, the ALJ did

1    not explain whether that included Dr. Bogle's impressions of PTSD, depression, and panic

2    disorder, and to what degree, or whether he rejected the statements.

3           In addition, the ALJ erred where he failed to discuss the opinions of the nurse practitioner

4    at Mendocino Community Mental Health.  Whether or not the nurse practitioner qualified as a

5    "other acceptable medical source,"[1] or was simply an "other source," makes no difference.  This is

6    because "[t]he ALJ may discount testimony from these 'other sources' if the ALJ 'gives reasons

7    germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)

8    (internal quotations omitted) (articulating standard for the treatments of physician's assistant's

9    opinions).  The ALJ gave no reasons for discounting the evidence from the nurse practitioner at

10   Mendocino Community Mental Health.  The error here is especially egregious where the nurse

11   practitioner saw Plaintiff on several occasions and her records make direct references to Plaintiff's

12   limitations and ability to work.  *See supra* ("The meds seem to control the Bipolar and PTSD, but

13   do not affect ct's inability to work, take care of her family or make good decisions.").  In contrast,

14   the ALJ specifically found that Plaintiff's "nonexertional limitations had little or no effect on the

15   occupational base of unskilled work" and on that basis applied the Medical-Vocational Guidelines,

16   did not consult a Vocational Expert, and found that "there are jobs that exist in significant

17   numbers in the national economy that Plaintiff can perform."  AR. 23.

18          Taking these two errors together, the ALJ's failure to discuss the treating physician's

19   notes, *Marsh,* 792 F.3d at 1172-73, and the failure to provide germane reasons to discount the

20   nurse practitioner's opinions, *Molina,* 674 F.3d 1111, the court finds that it is unable to review

21   properly the ALJ's determination.  The court does not find this error to be harmless given the

22   severity of limitations expressed, especially those of the "other sources."  *See Marsh* 792 F.3d at

23   1173.

24          Moreover, the error affects the whole of the ALJ's decision because, as discussed above,

25   the error invades the final determination regarding availability of jobs as well as the initial Step

26   Two determination.  Plaintiff's other claims for relief all revolve around or center on the opinions

27

28   [1]  *See Molina,  v. Astrue*, 674 F.3d 1104, n. 3 (9th Cir. 2012)

United States District Court
Northern District of California

by Dr. Bogle or those from Mendocino Community Mental Health.  For example, Plaintiff's

challenge to the ALJ's analysis of Dr. Segal's opinions is based in part on the opinion of Dr.

Bogle.  Accordingly, the court finds it appropriate to decline ruling on Plaintiff's other claims.

*See Haverlock v. Colvin*, No. 2:12-CV-2393 DAD, 2014 WL 670202, at *5 (E.D. Cal. Feb. 20,

2014) ("In light of the remand required by the ALJ's error at step two, the court need not address

[P]laintiff's remaining claims.").

**CONCLUSION**

For the reasons stated above, the court GRANTS Plaintiff's motion for summary

judgment, and DENIES Defendant's motion for summary judgment.  The court hereby

REMANDS this matter for further proceedings in accordance with this Order.

A separate judgment will issue.

**IT IS SO ORDERED**.

Dated: July 6, 2016

_____
NANDOR J. VADAS
United States Magistrate Judge